The final case on this dock is a score of 22-23-0050. The defendant is the state of Illinois, Jensen McAuley v. Sean Hemphill. The argument on behalf of the defendant, Mr. Douglas H. Johnson. The argument on behalf of the McAuley, Mr. Miles J. Keller. Mr. Johnson, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Doug Johnson and I represent the defendant's appellant, Sean Hemphill, who is currently serving 45 years for his predatory criminal sexual assault convictions and related charges. This is the third time this case is before you, Your Honors. And this time it comes before you after a first stage dismissal of the post-conviction petition that we filed. If time permits, I'd like to point out three pieces of evidence we attached to the petition. First and foremost, with regard to our actual innocence claim, the affidavit of Kyler Hosanna. This is the husband of Ryan, the mother of A.H., the victim. It turns out he was present for what I would submit is the crucial moment in this case. Five years after Sean had left the home, after a trial where she said he did nothing wrong to her, while the case was up on appeal, after the second appeal, the child is caught watching pornography. Trial judge knew that. But why this is so important, what Kyler Hosanna has come forward, it had no benefit to him, by the way, he's come forward, he was there, and he said this was a big fight. As one would expect, this is a huge thing. Ryan, the mother, saw her, found out she was watching porn, and she got very, very mad, which caused the child to run into the bathroom and shut the door. And the trial judge didn't know that. The trial judge heard, well, Ryan said, you know, I caught her, she was looking at something, I told her, we resolved it. So this was a much bigger deal than what was testified to the trial judge. Certainly no one knew what Kyler Hosanna had witnessed. And this, I submit, was the moment in the case, because the allegations, as we all know, in 2017, were far, far more serious than what she had ultimately, allegedly said in the bathtub. So, counsel, other cases where we've had claims of actual innocence, we will often see an affidavit indicating the defendant was not at the scene of the crime, or the defendant didn't do it in one way or another. How does this affidavit actually support a claim of actual innocence? I think because the trial judge said this case came down to credibility. And the prosecutor was able to say, as in all these cases, or most, why would she make this up? And now we have the answer to that. We now can answer that and show he's innocent because there's a reason she made it up. And more important, just as important, is at the trial level, the judge did not know the temporal relationship of the porn watching situation and the allegations, the 2017 allegations. The trial judge knew it happened sometime in 2017, but not whether the allegations came before the porn punishment or after. And I submit to you a teenager, a 13 or 14-year-old teenager, could have lost her phone. A reasonable thing is, well, she's going to get her phone taken away. That was maybe the threat. In that situation, I think a lot of teenagers would rather lose an arm than their phone. And so it is not a stretch to say she would do anything to deflect punishment to herself and say, well, wait a minute. I know I haven't said anything for five years, and I never said he touched my vagina with blah, blah, blah, but I'm going to tell you that now. And I think that's huge in a case. This is the easiest allegation. I believe the court has said this is the easiest allegation to make and the hardest one to defend against. And if I was facing this charge, I would certainly want a fact finder to know, look at what happened when these allegations were made against me. And so I believe that is very strong from an eyewitness to the ultimate issue in the case, the credibility, that shows his actual innocence. Because as the court may recall, this case was vacated. The conviction after the first trial was vacated because the child did not accuse her father of anything. So then, counsel, this will go to a motive to add the new claims post-trial one. Yes, even if this court finds, well, we believe the old claims. We believe the bathtub and the 2012 allegations of criminal sexual abuse, but we don't believe the new claims. And this certainly goes to the new claims of the more serious charges. And it should be recalled, too, that this child was impeached to some extent. This story, the evidence was not, this court did not call the evidence overwhelming after the second trial. And so this, I believe, would tip the scales and meets the burden of showing that there probably would change the result on a retrial. We know a couple other, the state says, well, this is cumulative. And as I understand cumulative evidence, that's when the evidence adds nothing. And I submit here, this evidence adds a lot. As I said, the temporal relationship. The jury, the finder of fact, did not know about the true nature of when these allegations happened. So on the basis of that affidavit alone, I submit an evidentiary, or it should be advanced to the second stage. I certainly don't think this is a delusional position to take. I mean, this was dismissed as frivolous and patently without merit, and I think that was certainly in error. And I think practicing a de novo standard of review, this court should send it back so that it could proceed pursuant to the act. There are also, I'd like to highlight two other pieces of evidence the jury did not hear. And one is what was going on in this household in this marriage. Because what the defense tried to argue was, you know, this was just a, what the defense tried to argue was, this was a horrible marriage. And Sean wanted to leave, but he didn't want to lose his daughter. And he also had financial concerns. But this marriage was over. It was awful. And Ryan testified, no, you know, we had our marital spats, but just normal stuff. It was okay. And what do we know now from the phone dump of the child's phone? We know that, and Ryan said, she used the term, we got along pretty well. And now we look at her phone and we see, quote, when my mom and my real dad were together, they fought every day until they ended up sleeping in separate rooms. I would spend hours outside by myself so I wouldn't have to listen to them yelling. That's what was going on in this household. But what the finder of fact heard and what the prosecution argued was, it was fine. And the prosecution scoffed by saying, oh, so this was a dysfunctional, this magical dysfunctional household is where these allegations came from. That's what the prosecution was able to argue, saying it wasn't dysfunctional. But I submit to you where a child is being driven out of the home for hours, that there is something very awful going on. And that's exactly what Sean tried to testify to. But he couldn't. He had no support. Now we see the truth. And the state says, well, that's cumulative too. And I submit to you it's not. They point to the testimony of Sean's sister, Julia Albers. Julia Albers testified for the defense that she was in the household for three days on one occasion. And it was kind of tense. And that Sean and Ryan didn't spend time with each other. That's what the finder of fact heard. And, in fact, when the prosecution on re-cross, or on cross got to elicit this testimony from Julia, she said she had no, she admitted she had no personal knowledge that the failure to interact between Sean and Ryan was a long-term thing or just a short-term spat. So I submit to you that's very different than a household where a child is driven from the home every day for hours. Counsel, I'm having a problem following the connection between the, and is it untrue that he was a late sleeper and the alarm clock would wake him up or wouldn't wake him up? Is that false? He, in other words, with regard to how he testified to why they slept in separate rooms? Well, the way I'm getting your argument is that in the first trial the statements or the testimony was that the man and the wife had some arguments, but it wasn't hellish. And that they slept in separate rooms because she got up at a time that would have awakened him because he was a late sleeper and she snored. And then you claim that that wasn't true. If there was hell going on and this establishes total impeachment of the child, such that you've established innocence, that seems to be the argument you're making. This is part of our ineffective assistance at counsel claim argument. I think it should be considered. If we didn't have the affidavit of Kyler Hosanna, I don't think I could call this new evidence that would support an actual innocence claim. But I think it should be considered in addition to the Kyler Hosanna affidavit. I'm also not saying that that's untrue. Also, Sean said, well, she drank a lot too at night and that caused her to snore. Perhaps it was trial strategy not to add all these details because they wouldn't, maybe without the actual evidence we have now, it wouldn't have been believed. But I don't believe what he said was untrue. It was just another reason they slept in separate rooms. Because he had no support, like we now see on this phone, the strategy might have been that the judge would never believe it. But now, so I believe it supports an ineffective assistance at counsel claim because this should have been pointed out. Indeed, just like we're trying to say this marriage was over, it was awful, and she is trying to get revenge on him, and that is why I attached the scholarly article entitled False Accusations of Sexual Abuse as a Means of Revenge in Couple Disputes. I mean, I know this court has extensive experience of seeing these cases in careers and as justices, but this is a thing that is very common apparently. 30% in that article, 30% of the claims of inter-familial abuse were found to be baseless. So it's certainly, I think that is some support for the theory here that if you have, it is not fanciful or delusional to think that a bad marriage can give rise to exactly these types of accusations. And lastly, I'd like to point out about the cue cards that the child was able to use. I mean, this has been before, Your Honors, you have decided on this issue before, but what we didn't know before is again comes from the child's phone. And I won't repeat the things on there, but it is, just as an example, the court took the drastic step, I believe, for a 13 or 14-year-old and basically gave the child a teleprompter with penis, vagina on these cards. And it was because this child was just so offended, so awful, that she could not say these words. And I'm not belittling the victims of sexual abuse. I don't think she was one here, but I don't mean to belittle it, but when we talk about cross-examination in a case like this of the victim, those cue cards, it clearly we now know they should not have been used because she used those words in her daily routine. I mean, they're on her phone. She's joking. She has one contact, as I pointed out, and his name is Penis. And then they're making jokes about it. And they're jokes. There's references on that. A discussion about masturbation is mentioned. And there's a sex hotline. And so if this is on her phone, how can we put her on the stand and give her these cue cards, obviously hindering a cross-examination of this victim? And I believe it's the only case. I understand the state will argue, well, we have comfort dogs. I understand that. And I understand it's a very hard situation. But here we don't have a 4-year-old, and we don't have someone who's never learned about sex or things other than from the actual abuse. This is a 13- or 14-year-old who's watching pornography and is not telling the truth about it. It doesn't seem she's telling the truth because if you're so disgusted by these terms that you are going to, you need these cards, why would you be using them on your phone? The trial court reasoned that behavior among friends over a phone is different from being in open court, facing your accuser, who also happens to be your father. But in what way did that hinder the cross-examination or cause prejudice otherwise? I think because it was basically a multiple choice. I mean, it kind of led her along. Instead of having to think and picture what she says had happened to her and give a narrative of it, she could just point to the word penis. I mean, I don't know how you deal with that. She needed to be cross-examined extensively without those terms in front of her written down. And is this the precedent? Because I'm sure, I agree, every single victim of child sexual abuse is going to be horrible. Any other questions? I have none. Thank you. Thank you, Your Honor. Would you like to close with a conclusory statement? I would, Your Honor. I think we don't want to have the precedent be that a child is going to get to use cue cards in every case because they say they're uncomfortable. The defendant is in the penitentiary for the rest of his life. I think we have to look at his interests a bit. And for those reasons, we ask that you reverse the first-stage dismissal and advance it pursuant to the act. Thank you. You'll have an opportunity to make rebuttal. Mr. Kelleher, you may proceed. Good morning, Governors, Counsel, Myles Kelleher on behalf of the people. May it please the Court. The trial court properly dismissed the defendant's post-conviction petition at first stage because it was frivolous and patently without merit. None of the claims in the petition had an arguable basis in factor law. As far as defendant's claim of actual innocence, it falls far short. A claim of actual innocence is typically very difficult to prove. Generally, you need scientific evidence such as DNA or you need compelling testimony that, for example, places the defendant with a solid alibi or away from the scene, as was mentioned here, or something that, you know, puts the whole case in a new light and really casts doubt on the confidence of the judgment of guilt. That's not the case here. Here, the evidence that the defendant is trying to suggest supports actual innocence is evidence which, at best, would merely impeach witnesses' trial testimony, and that's an insufficient basis for granting a new trial. That's in the case of Ortiz. So defendant Jenner primarily relies on the affidavit of Kyler Hosanna. In his affidavit, first of all, he admits that he pled guilty to sexually abusing the victim in a separate case, and then he claims that he was present when the mother, Ryan, confronted the victim after she looked at the search history on her phone and discovered that she had visited several porn sites. And according to Kyler, Ryan was angry. There was some yelling, and Ryan told the victim that she was in big trouble. And Ryan concludes that, or I'm sorry, Kyler concludes that it was because of that that the victim then comes forward with new allegations against the defendant. Well, even if we take everything in that affidavit as true, which is what this court does at the first stage, it falls far short of a claim of actual innocence. First of all, it's cumulative to evidence that was already produced at trial. Ryan testified that she viewed the search history on the victim's phone, and she discovered that the victim had viewed several porn videos. And Ryan confronted the victim, and the victim testified about that too. She admitted, yes, I had visited several porn sites. So this was all before the trial court. Kyler's affidavit adds little, if anything, new to what was already before the trial court. It's cumulative, and cumulative evidence is insufficient to support a claim of actual innocence. And then it certainly was not of such conclusive character that it would probably change the result on retrial. The notion that because the victim viewed porn videos, suddenly her testimony cannot be credible is just totally speculative. It's pulled right out of thin air. There's no evidence to support that there in this case. And it's notable that the trial court was well aware that the victim had viewed several porn videos. And the trial court specifically said that it considered the totality of the circumstances, all the circumstances at trial. And the trial court made a determination that the victim's testimony was credible as to the claims against defendant. That's what a trial fact does. It considers all the evidence. And here it considered basically everything that is now put forth in Kyler Hosanna's affidavit. Again, it was cumulative, and it really adds little, if anything, to what was already put forward at trial. Counsel, the defendant's argument is that the new evidence from the affidavit provides a motive for the addition of the new claims. Why does that fail to state the gist of a constitutional claim for stage one purposes? Your Honor, it's totally speculative. There's no evidence to support it. The trial court, who was the trier of fact, could have found that, well, perhaps under certain circumstances it did provide a motive, but that wasn't what he found here. And, again, for a claim of actual innocence, it has to be evidence that, Your Honor Robinson, new evidence that places the trial evidence in a different light and undermines the confidence of the judgment of guilt. And this falls far short of this. This is essentially what the trial court already heard, and the trial court made its determination based on the totality of the evidence and, you know, made a credibility determination. And there's all sorts of reasons why a victim, a 13-year-old, might look at several porn videos. And, you know, the issue isn't whether it was right or wrong for her to do that. Perhaps she was trying to figure out, like, what had happened to her. She had been the victim of sexual assault by two different men, and it's very possible that she was just trying to figure out, like, what was happening. And, you know, she may have Googled something, and, you know, there's so much on the Internet that might pop up when she does that. But, obviously, this was something for the trial court to decide, whether, you know, her viewing several porn videos, which she freely admitted she did. And that's not uncommon for teenagers. I mean, every teenager now is carrying a phone, and they can access stuff very easily now. And that doesn't mean that someone who has viewed porn videos cannot be a credible witness as to the sexual abuse that she endured by her father. As far as the evidence of their marriage, again, this is cumulative evidence. There is ample evidence. You know, she had a text message on her phone saying that her parents had fought every day and slept in different rooms. Well, we know they slept in different rooms, because I would submit that's one of the things that facilitated the sexual abuse here, the fact that a defendant was sleeping in a separate room from Ryan enabled them to be alone with the victim so that Ryan wouldn't know about it. But as far as the testimony about them fighting, this is cumulative. Ryan testified, you know, first she said they got along pretty well, but then she went into more detail, and she said, well, we've had fights about housework. We've had fights about the defendant watching video games. So she acknowledges that they had fights. And then Julia Elber, defendant's sister, she's visiting from out of state for about three days. She's there for a short time, and she describes the situation as kind of tense. And she testified that she observed the defendant and Ryan fight on multiple occasions, and that was just in a three-day span. So there's ample evidence at trial that Ryan and defendant, you know, were fighting. Maybe not all the time, but enough that, you know, it certainly caught the attention of Julia Elber,  And I would just, you know, counsel mentions evidence outside the record. Obviously, this court should not consider that. But what evidence was there that established a connection between the animosity or the fighting and the tendency or the factual creation of false testimony? Well, Your Honor, you beat me. I was just about to make that point. There is no evidence. It's all speculation. There's, you know, lots of parents fight at times. But that doesn't mean that a child cannot testify credibly about sexual abuse. And, again, this is something for the trier of fact. This was all ñ this is not new evidence. This is cumulative, and this is ñ I wouldn't say cumulative so much as I would suggest that ñ or put it another way. I'll ask you, how is it cumulative relative to whether or not sexual assaults took place? Are you telling me that sexual assaults are more probable to have occurred in households where the parents fight? Not at all, Judge, Your Honor. Well, then, what's the connection? What probative value does fighting in a household establish that someone should be impeached about testimony regarding sexual assaults? There is no probative value. They're two independent things. Why do you say they're cumulative? When I say cumulative, I'm talking about the evidence that there was fighting. That was cumulative. In any event ñ I think cumulative means that there's additional evidence that essentially mimics or is a redundancy. Yeah.  That's cumulative. What I was trying to say is there's evidence from both Ryan and Julia Elber that there was marital fighting, and then the text message on the victim's phone also said there was marital fighting. That's all I meant when I said cumulative. But going back to your other point, Your Honor, there is no connection between fighting and the veracity of the victim's statements. The fact that Ryan and Julia said ñ Well, the counsel raises the argument that in a marriage where there is great discourse, there is motivation for revenge or for perhaps planting the seeds in the mind of a child that precipitates allegations. I think that's his point. Your Honor, there's always the possibility of different motives, and that's something that the trial court has to sort out. In assessing any witness's credibility, does this witness have a motive for why he or she is testifying? So, yes, of course, that could be a concern in certain cases, and certainly this was prominently discussed in this case. So when the trial court said, I consider the totality of the circumstances here, the trial court in considering all the evidence, the trial court did factor in. What I'd like you to respond to is his point that, look, there was this much evidence, if you will, of their marital discourse when in fact there was this much evidence that could have and should have been brought forward to enhance that motive. So your point is the court considered all the evidence. His point is they only had this much of the evidence of really how poor this marriage was and therefore the great probability of revenge or whatever you want to call it. The court had plenty of evidence. Kyler was subject to cross-examination. Defendant produced its own witness, Julia Alber, which indicated that the two parents were fighting. But still, it's speculation that there was a connection between any of that fighting and the veracity of the victim's statements. And we have to keep in mind originally the victim made an outcry to the teacher, the assistant principal in this case. There were statements that she gave to Michelle Hawley at the BSI interview. So it wasn't only statements that she made to her mother, Ryan. There's a lot of corroborating evidence and outcries in this case. And if I could just address the use of the word cards. First of all, that's res judicata. This court has already found that the trial court did not abuse its discretion in allowing the use of the word cards. So I submit, you know, re-litigation of this issue is barred by res judicata. But as far as the victim's sexual knowledge, if I could... Any other questions? You may close. Okay. For all these reasons, defendants' claims lack an arguable basis in either law or fact. Therefore, this court should affirm the summary dismissal of defendants' post-conviction petition. Thank you. Thank you. Mr. Johnson, you may proceed with rebuttal. Thank you. Just on that last point on the cue cards and the res judicata, I don't believe it's res judicata because of what we now see from the child's phone. And that's the point with that is the issue has been litigated, but we didn't know about the child using the terms in her everyday life. With regard to the fighting, how is this probative of our position? It isn't that arguing that if households, if couples fight, then sexual abuse is more common. That's not what I'm saying. What I'm saying is that Sean explained, I wanted out of the marriage, but I was afraid she would take my child. And so that's why we were living there. And then from there you can see, well, this may be one of those cases where she got, Ryan got what she wanted. She got the child. She got the home as a result of these allegations. That is the point of the fighting. And what the finder of fact heard, I just want to correct something, counsel said Julia Albert was there for three days and witnessed fighting. That isn't what she said. She said that she knew there had been fights that year maybe or something like that, but she did not witness any fighting. She witnessed them apart and the atmosphere was tense. But then the prosecutor skillfully and I imagine correctly said, but you don't know whether or not this was a long-term thing or a marital spat. And she said, no, I don't. So she was completely neutralized and didn't support. Now we know, and I submit this is a little different than Tyler on this point about the marital fighting. We know the truth. I think if we look at this child, what she wrote about every day and driven outside the house, the poor thing, there is no reason not to believe what she's writing. That makes sense. Why would she lie about that? So this isn't one where we're guessing. We know what the finder of fact heard was incorrect about the status of that marriage. With regard to Tyler, I believe he needs to be tested at an evidentiary hearing. Yes, I hate to hang a lot of my case on a sex offender, but he has no reason to. I talked to him. He has no reason to come forward. In fact, putting himself at risk, I imagine, he's already got his own troubles. But that would need to be tested at an evidentiary hearing. Counsel, even if we assumed everything that he would say at an evidentiary hearing was as you would assert, and it all goes to the best as far as your case is concerned, what difference does that make as to either the claim of actual innocence or any of your claims, really? I think the claim of actual innocence, I wish we had this was a case with DNA, or counsel says, for actual innocence, you need to show you were somewhere else. This is the father. This is a sex case, impossible to defend against. He lived in the home with her. So any child says this, as I said, easy allegation to make. We have the only thing, and I can't stress it enough, now we know. There was no, it was not known by the finder of fact how these 2017 allegations came. Now we know. And Kyler isn't saying, I'm not relying on Kyler. I don't believe in his affidavit. He said, and this is why she made him up. This is an inference I believe we can draw. He just was an eyewitness observer to what happened. It is, I'm not sure if it applies to justices of the Illinois Appellate Court, but I think for a lot of us, this is very reasonable child behavior. You get in trouble, and so you lie your way out of it, or you look for sympathy. Who broke the window? Oh, by the way, I got bullied at school today. I mean, it's simple child behavior. So in this situation, she's in big, big trouble. So what better thing to do than garner sympathy and get out of it this way? I do want to add that the point is deleted off her phone. We did have an expert look at the phone, and it's no longer there. So either Ryan and or A.H. deleted it, or the prosecution. I believe you would figure, and I would believe it would be the former, but it's gone. Why is it gone? I mean, that's some pretty interesting information. And I don't know how we can have confidence in this verdict. Kyler does not merely, he does impeach Ryan. I'm sorry, you said verdict? How we have confidence in the guilty verdict. Wasn't it a bench trial? I'm sorry, yes, it was a bench trial, yes, in the finding of guilt. Kyler does impeach Ryan. She lied. She said they got along pretty well. We now know they didn't. But more importantly than that, it's new evidence. It's not mere impeachment, as counsel cited Ortiz. In Ortiz, some evidence was found not to be cumulative because it went to the ultimate issue. So for all these reasons, I certainly believe that dismissal at the first stage was improper, and this case should be advanced. Any other questions? No, sir, I do not. Thank you. We'll take the case under advisement. This is the last case on the call. Court is adjourned.